THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| IAN COOPERSTEIN,<br><br>    Plaintiff,<br><br>vs.<br><br>SALT LAKE CITY CORPORATION, SALT LAKE CITY POLICE DEPARTMENT, POLICE CHIEF MIKE BROWN, OFFICER ANDERSON, and OFFICER WEST,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:23-cv-00468-DBP<br><br>Chief Magistrate Judge Dustin B. Pead |

This matter comes before the court on Defendants' Motion to Dismiss. (ECF No. 10.) The case arises from an incident involving a standby assist where two police officers aided an individual in retrieving certain belongings from Plaintiff, Ian Cooperstien's garage. Plaintiff filed suit against Defendants under 42 U.S.C. § 1983, asserting the Officers engaged in an illegal search or seizure violating the Fourth Amendment, and that the other Defendants caused the constitutional violation. After considering the parties' briefs, the video recordings of the incident, and hearing argument, the Court grants the motion as set forth herein.[1]

---

[1] The parties consented to the undersigned conducting all proceedings in this matter with appeal directly to the Tenth Circuit Court of Appeals. (ECF No. 9.)

## BACKGROUND[2]

On August 15, 2022, Salt Lake City Police Officer Jake Anderson was dispatched to 2714 S. McClelland Street in Salt Lake City. He was informed by dispatch that a complainant, Heidi Williams, "needs to collect belongings from [the] garage."[3] Upon arrival, Ms. Williams told Officer Anderson that she had moved out of the house two weeks prior after having lived there for ten months. She said she had been in a relationship with the man who lived there, whom she identified as Mr. Cooperstein. Ms. Williams stated Mr. Cooperstein told her "you're not allowed on my property" to retrieve her remaining belongings and that he was going to turn her belongings over to the sheriff.[4] Ms. Williams provided Officer Anderson her personal information as well as Mr. Cooperstein's name and date of birth from memory.[5]

---

[2] The court sets forth the facts derived from the Complaint and the materials incorporated therein in the light most favorable to Plaintiff. See *Ramirez v. Dep't of Corrs.*, 222 F.3d 1238, 1240 (10th Cir. 2000) ("We accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff."). On February 7, 2024, Mr. Cooperstein filed an affidavit. (ECF No. 17.) The Court granted Defendants' unopposed motion to strike that affidavit and therefore does not consider the affidavit here. (ECF No. 19.)

[3] Exhibit 1 (ECF No. 10-1). This Exhibit 1, the police report of the incident at issue, was expressly referenced in and thus incorporated into the Complaint. Compl. ¶¶ 3, 9, 42 (ECF No. 1). The Court may therefore consider it on this Motion to Dismiss without converting it to a motion for summary judgment. See *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

[4] Exhibit 2 (ECF No. 10-2) at 0:00 to 1:44. Exhibits 2 and 3 are the videos of Officer West's and Officer Anderson's body-worn cameras, which were expressly referenced in and incorporated into the Complaint and are central to Mr. Cooperstein's claim. Compl. ¶¶ 29, 34 (ECF No. 1). The Court may thus consider the videos on this Motion to Dismiss as well. See *Smith*, 561 F.3d at 1098; *Myers v. Brewer*, 773 F. App'x 1032, 1035 n.2 (10th Cir. 2019) (unpublished) (recognizing that for a Rule 12(b)(6) motion, "we accept all well-pleaded factual allegations in the complaint as true, and may consider audio and video recordings taken from the responding officers' body cameras, which are referenced in the complaint" (citations and internal quotation marks omitted)). Mr. Cooperstein does not dispute that the Exhibits to Defendants' Motion were properly before the Court.

[5] Exhibit 2 (ECF No. 10-2) at 1:55 to 2:40.

Officer Anderson asked Ms. Williams if there were any protective orders in place. Ms. Williams stated there were not, but Officer Anderson informed her he was going to confirm because he "did not want to be a facilitator in that kind of violation either way." Officer Anderson explained if Mr. Cooperstein did not provide them access to the property, "there's not a lot we can do to help you." He further explained the Officers were there as a "standby assist," meaning "we're here to just keep it calm and, you know, non-violent," and if Ms. Williams was comfortable engaging with Mr. Cooperstein by herself, the Officers would stand back.[6] While speaking with Officer Anderson, Ms. Williams appeared calm and rational.[7] Officer Anderson confirmed there was no protective order in place against Ms. Williams or Mr. Cooperstein. When Officer Logan West arrived, Officer Anderson told him the situation involved "an ex picking up her property" and that there was "no protection order or anything in place." While Ms. Williams went to Mr. Cooperstein's door, Officer Anderson relayed to Officer West what Ms. Williams had told him.[8]

When they saw Mr. Cooperstein had come outside, Officers Anderson and West walked to where Mr. Cooperstein and Ms. Williams were talking in the front yard of Mr. Cooperstein's property. Ms. Williams told Mr. Cooperstein, "You're not a landlord. I was your live-in girlfriend." Mr. Cooperstein responded, "That's a landlord agreement." Ms. Williams responded, "OK, well you have my property. Can I please get my property from your garage?" She said she called the county sheriff's office, which said it did not have her property. She asked Mr.

---

[6] Exhibit 2 (ECF No. 10-2) at 2:49 to 4:37.
[7] *See* Exhibit 2 (ECF No. 10-2) at 0:00 to 4:51.
[8] Exhibit 2 (ECF No. 10-2) at 5:01 to 13:55; Exhibit 3 (ECF No. 10-3) at 0:00 to 2:45.

3

Cooperstein to "please just let me get my things." Ms. Williams identified the items as including "my girls' baby boxes, and their bikes, and my deceased brother's suitcase."[9]

Mr. Cooperstein then turned toward the Officers and said Ms. Williams was a "non-paying tenant." Officer West asked Mr. Cooperstein, "Does she have stuff here?" Mr. Cooperstein responded, "**She does have stuff**."[10] Officer West said, "OK, she was your girlfriend, man, that's bulls---. Let's get her stuff and get out of here so I don't have to worry about this anymore." Officer Anderson said, "You can't keep her property from her." The Officers stated, "That's theft," and "You go to jail very fast for that."[11]

Mr. Cooperstein then told the Officers he called the sheriff earlier that day, who told Mr. Cooperstein he had to "file the eviction stuff, which I just got." Officer Anderson said Ms. Williams had not yet been evicted and still had a right to the property. Mr. Cooperstein stated Ms. Williams had "changed her address." Officer West responded, "Right, she's already moved out, man. She's coming to get her stuff to get off your property. Let's get it and get it over with." Mr. Cooperstein then shrugged his shoulders and said, "**Fine**." He turned and walked toward the back of the property. The Officers and Ms. Williams followed him at a distance.[12]

Mr. Cooperstein went to the side door and entered the house. The Officers did not follow Mr. Cooperstein to the door nor at any time did they enter the house or request to enter the

---

[9] Exhibit 2 (ECF No. 10-2) at 14:26 to 14:50; Exhibit 3 (ECF No. 10-3) at 2:55 to 3:41.

[10] Mr. Cooperstein's allegations in the Complaint that "Ms. Williams contacted the police on the false claim that Mr. Cooperstein was withholding her possessions in his garage" and that "[i]n reality, the items in Mr. Cooperstein's garage belonged to him" are contradicted by the videos. Compl. ¶ 26 (ECF No. 1).

[11] Exhibit 2 (ECF No. 10-2) at 14:49 to 14:59; Exhibit 3 (ECF No. 10-3) at 3:41 to 3:55.

[12] Exhibit 2 (ECF No. 10-2) at 14:49 to 15:25; Exhibit 3 (ECF No. 10-3) at 3:41 to 4:20. Mr. Cooperstein's allegation that "the officers refused to speak with Mr. Cooperstein" is contradicted by the uncontroverted videos. Compl. ¶ 27 (ECF No. 1).

4

house. Instead, the Officers and Ms. Williams continued walking down the driveway and waited by the garage. While walking toward the garage, Officer West asked Ms. Williams how many things she had. She responded, "I just have two bikes, two scooters, baby boxes, a couple suitcases, a basketball."[13]

Approximately 45 seconds after he entered the house—and while outside the presence and view of the Officers—Mr. Cooperstein remotely opened the garage door from inside the house.[14] Mr. Cooperstein did not exit the house again, and the Officers had no further interaction with him.[15]

Once Mr. Cooperstein opened the garage for them, Ms. Williams told the Officers, "It's literally just this stuff right here" and pointed to a pile of items segregated in one area at the front of the garage that comprised two bicycles, scooters, several suitcases, boxes, and kids toys. Because the Officers believed "the quicker the better," they helped Ms. Williams remove the items to the street curb. The Officers watched the house while Ms. Williams loaded the items into her vehicle. Ms. Williams and the Officers all separately left the property.[16]

Following the incident, Mr. Cooperstein filed a complaint with the Salt Lake City Police Department. The Department's Internal Affairs Unit determined that "the officers involved in this case should have remained impartial and considered all sides of the involved parties. As a

---

[13] Exhibit 2 (ECF No. 10-2) at 15:23 to 15:30; Exhibit 3 (ECF No. 10-3) at 4:15 to 4:23.

[14] Exhibit 2 (ECF No. 10-2) at 15:25 to 16:20: Exhibit 3 (ECF No. 10-3) at 4:12 to 5:15.

[15] *See generally* Exhibit 2 (ECF No. 10-2) at 15:20 to 22:34; Exhibit 3 (ECF No. 10-3) at 4:15 to 11:28.

[16] Exhibit 2 (ECF No. 10-2) at 16:23 to 19:40; Exhibit 3 (ECF No. 10-3) at 5:15 to 8:21.

result of their involvement, the involved officers have received additional training specific to SLCPD Policy 430-Civil Disputes."[17]

Mr. Cooperstein filed this suit. He alleged Ms. Williams took household items that belonged to him such as blenders, cutlery, and an end table, which he estimated to be worth approximately $725, and a box that contained his childhood mementos and medical and legal paperwork. The videos show that Ms. Williams took certain items such as bikes, scooters, and kids toys from the garage. Mr. Cooperstein does not allege Ms. Williams stole these items from him.[18]

Mr. Cooperstein asserts six causes of action: (1) Illegal search and/or seizure in violation of the Fourth Amendment under 42 U.S.C. § 1983 against Officers West and Anderson; (2) Failure to intervene in violation of the Fourth Amendment under 42 U.S.C. § 1983 against Officer Anderson; (3) *Monell* liability under 42 U.S.C. § 1983 against Salt Lake City, the Salt Lake City Police Department, and Police Chief Mike Brown; (4) Violation of Article I, Section 14 of the Utah Constitution against Officers West and Anderson; (5) Breach of Fiduciary Duty as a Public Official against Officers West and Anderson; and (6) Intentional Infliction of Emotional Distress against Officers West and Anderson.[19]

## STANDARD OF REVIEW

In reviewing the Complaint, the Court accepts all well-pleaded factual allegations and views the allegations in a light most favorable to the plaintiff, drawing all reasonable inferences in Mr. Cooperstein's favor. *See* Wilson v. Montano, 715 F.3d 847, 852 (10th Cir. 2013). To

---

[17] Compl., Exhibit 1 (ECF No 1).
[18] *See* Compl. ¶ 28 (ECF No. 1).
[19] *See generally* Compl. (ECF No. 1).

avoid dismissal, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Hogan v. Winder, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). However, the Supreme Court mandates "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Thus, if there is "videotape capturing the events in question" that blatantly contradicts a plaintiff's version, a court cannot adopt the "visible fiction" but must "view[] the facts in the light depicted by the videotape." Id. at 381.

      The Tenth Circuit has provided that "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." Id. (internal quotation marks omitted). "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." Id. (brackets and internal quotation marks omitted). Courts evaluate "(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established." Keith v. Koerner, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted).

# DISCUSSION

## I. FOURTH AMENDMENT CLAIMS AGAINST OFFICERS ANDERSON AND WEST

### A. Qualified Immunity Standard

Section 1983 of Title 42 provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "The statute is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017) (quotations omitted).

Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). When a § 1983 defendant raises the qualified immunity defense, the burden shifts to the plaintiff. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). To overcome qualified immunity, a plaintiff must show (1) facts that demonstrate the officials violated a federal constitutional or statutory right, which (2) was clearly established at the time of the defendant's conduct. See *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). The court may address either prong of the inquiry first and need not address both if one is dispositive. See *Pearson*, 555 U.S. at 236, 243–45. Because qualified immunity is immunity from suit rather than a mere defense to liability, the Supreme Court has repeatedly stressed the importance of resolving immunity questions "at the earliest possible stage in litigation." *Id.* at 231–32.

Here, Defendants assert the Court can rule in their favor on the first prong of the qualified immunity analysis based on the Complaint's allegations and the uncontroverted videos. In response, Mr. Cooperstein contends dismissal is premature and he should be permitted to take discovery. When asked at the hearing what additional discovery would shed light on the key issues, Mr. Cooperstein identified testimony from Ms. Williams, such as her statements and court filings that post-dated the incident at issue; testimony from the Officers; and discovery related to Police Department policies and training.[20] While the Court is cautious to grant a motion to dismiss where discovery can shed an important light on the events at issue, the Court finds that in this case the uncontroverted bodycam videos establish facts regarding the key issue of consent that are not in dispute. The Court therefore concludes that dismissal is appropriate in light of the allegations and videos before the Court as well as the Supreme Court's mandate to resolve immunity questions "at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 231–32.

### B.   Mr. Cooperstein Voluntarily Consented

Mr. Cooperstein alleged the Officers violated his Fourth Amendment rights by "entering [his] home without probable cause and/or a warrant and unreasonably seizing Mr. Cooperstein's property and giving it to Ms. Williams."[21] The Fourth Amendment of the United States Constitution protects "'against unreasonable searches and seizures.'" *Soza v. Demsich*, 13 F.4th 1094, 1099 (10th Cir. 2021) (quoting U.S. Const. amend. IV). But not every interaction constitutes a seizure; a seizure occurs when a government actor uses physical force or show of

---

[20] Hearing at 4:05–7:20.
[21] Compl. ¶ 47 (ECF No. 1).

authority that restrains the liberty of the citizen. The inquiry is objective; thus, as long as a reasonable, innocent person (as opposed to an individual knowingly carrying contraband, for example) would feel free to leave, such encounters are consensual and need not be supported by reasonable suspicion of criminal activity. The subjective intentions or state of mind of the officers or individual are irrelevant. "Consent may be verbal, or it 'may instead be granted through gestures or other indications of acquiescence.'" *Watkins v. Wunderlich*, No. 22-1358, 2023 WL 4145904, at *4 (10th Cir. June 23, 2023) (unpublished) (quoting *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007)). "The test" to establish consent "is whether the [individual's] actions are 'clear' and 'sufficiently comprehensible to a reasonable officer.'" *Id.* (quoting *Guerrero*, 472 F.3d at 789–90). "[T]he burden to show consent was involuntary rests on the plaintiff in a civil case." *Fortner v. Young*, 582 F. App'x 776, 782 (10th Cir. 2014) (unpublished). Here, the Court concludes that the undisputed facts show a reasonable officer would believe Mr. Cooperstein voluntarily consented to the removal of the items Ms. Williams identified as hers in the garage.

The Court recognizes that the entire encounter with the Officers is relevant to the analysis, which considers the totality of the circumstances. However, the key facts occur in the roughly minute-long interaction between Mr. Cooperstein and the Officers. Officer West asked Mr. Cooperstein, "Does she have stuff here?" Mr. Cooperstein responded, "She does have stuff." Officer West then appeared to adopt Ms. Williams's belief about the nature of the relationship and accused Mr. Cooperstein of having been Ms. Williams's boyfriend. Officer West said, "Let's get her stuff and get out of here so I don't have to worry about this anymore." Officer Anderson said, "You can't keep her property from her." Both Officers made claims that you can go to jail

for theft. Mr. Cooperstein and the Officers discussed filing an eviction and that Ms. Williams had already moved out. Mr. Cooperstein then shrugged his shoulders, said "fine," and walked toward the back of the property. The Officers and Ms. Williams followed him back toward the garage. The Officers were not directly behind Mr. Cooperstein as he walked, nor did they ever lay hands on him. Based on these facts, a reasonable officer would believe that Mr. Cooperstein consented.

Mr. Cooperstein contends that his consent was not voluntary because he believed he was going to be arrested if he did not open the garage. However, the Court concludes from the videos that a reasonable individual in Mr. Cooperstein's position would not believe he would be arrested if he did not consent. In particular, the Officers never put their hands on Mr. Cooperstein, did not escort him to the garage, did not follow him into his home to get the garage opener, and did not require him to open the garage before leaving their sight. Rather, Mr. Cooperstein left the sight and presence of the Officers for approximately 45 seconds before opening the garage. The separation of Mr. Cooperstein from the physical presence and view of the Officers and inside his home undermines his claim that he was in danger of imminent arrest.

The sum of other relevant factors also weighs in favor of the voluntariness of Mr. Cooperstein's consent. *See United States v. Mercado-Gracia*, 989 F.3d 829, 836 (10th Cir. 2021) (identifying relevant factors).[22] The location of the encounter was on Mr. Cooperstein's

---

[22] The Tenth Circuit has noted that "several non-exclusive factors" are considered including:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or

11

property but outside the home and in an open, public place. The Officers did not touch or physically restrain Mr. Cooperstein, nor did they detain him or block his movements. The Officers did not display their weapons.[23] These factors weigh in favor of voluntary consent.

The Court acknowledges the Officers were in uniform, there were two of them, and their tone was aggressive or at least forceful. An officer also mentioned Plaintiff could go to jail for theft if he were to retain property that did not belong to him. While no "one factor is dispositive", *id.* (citation omitted), the court looks to the "coercive effect of the police conduct, taken as a whole on a reasonable person." *Id.* (citation omitted). These facts do not sufficiently undermine the voluntariness of the encounter.

The entire interaction with the Officers was not long lasting approximately a minute— roughly the same amount of time as Mr. Cooperstein was in the house alone before opening the garage. These facts are unlike the circumstances in *Kaupp v. Texas*, 538 U.S. 626 (2003), which Plaintiff relies on. In particular, the Officers here were not already in the home saying "we need to talk", or they did not awaken Mr. Cooperstein with a flashlight at 3 a.m. in the morning. Further, the Officers never asked for, or retained, any of Mr. Cooperstein's personal effects such as identification.

The key question before the court is whether there was a constitutional violation, not whether the Officers' actions were offensive, aggressive, or in violation of Police Department

---

identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*Mercado-Gracia*, 989 F.3d at 836.

[23] The Officers had guns and Tasers, but it is undisputed they never drew a weapon. At the hearing, Mr. Cooperstein argued one Officer had his hand on his Taser, but that was not alleged in the Complaint nor included in the briefing. Mr. Cooperstein did not cite any authority that merely resting a hand on a Taser constituted "displaying" it.

policy. The Parties cited a number of cases, including *Kaupp*; *United States v. Jones*, 701 F.3d 1300 (10th Cir. 2012); *Watkins v. Wunderlich*, No. 22-1358, 2023 WL 4145904 (10th Cir. June 23, 2023) (unpublished); *United States v. Ballance*, 2022 WL 108330 (10th Cir. Jan. 12, 2022) (unpublished); *United States v. Benard*, 680 F.3d 1206 (10th Cir. 2012). When considering the above factors in light of case law, the court finds the totality of the circumstances here undermine Plaintiff's claims. In short, Mr. Cooperstein cannot meet his burden to show a constitutional violation.

      Finally, Mr. Cooperstein's consent extended to Ms. Williams's removal of the items she identified. The scope of a search or seizure is "limited by the breadth of the consent given." *United States v. Gigley*, 213 F.3d 509, 514 (10th Cir. 2000) (internal quotation marks omitted). To determine the scope of consent, the Tenth Circuit applies an "objective reasonableness" standard: "what would the typical reasonable person have understood by the exchange between the officer and the [individual giving consent]." *Id.* (internal quotation marks omitted). In this case, the video evidence shows a pile of belongings that was segregated in the front of the garage away from other items. Ms. Williams identified that pile as hers, and the contents were consistent with what she had earlier described to both Mr. Cooperstein and the Officers.[24] It is also undisputed that at no time did Mr. Cooperstein seek to limit the scope of his consent or inform the Officers that he owned the items Ms. Williams was removing from the garage. Under the circumstances, a reasonable person would understand Mr. Cooperstein's consent to cover thes items that Ms. Williams identified as hers and were part of the segregated pile.

---

[24] Exhibit 2 (ECF No. 10-2) at 15:23 to 16:30; Exhibit 3 (ECF No. 10-3) at 4:15 to 5:18.

In sum, based on the uncontroverted videos incorporated into the Complaint, a reasonable officer would believe that Mr. Cooperstein voluntarily consented to the removal of the items Ms. Williams identified as hers. Mr. Cooperstein therefore fails to carry his burden to show a constitutional violation. Mr. Cooperstein's Fourth Amendment claim is dismissed with prejudice.

## II. FAILURE TO INTERVENE CLAIM AGAINST OFFICER ANDERSON

Mr. Cooperstein asserts a claim against Officer Anderson for failing to intervene. "In order to be liable for failure to intervene, the officers must have observe[d] or ha[d] reason to know of a constitutional violation and have had a realistic opportunity to intervene." *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (internal quotation marks omitted) (alterations in original). Thus, "for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Id.* (internal quotation marks omitted). Because, as discussed above, there was no underlying constitutional violation, Officer Anderson cannot be liable for failing to intervene. The claim is dismissed with prejudice.

## III. CLAIMS AGAINST SALT LAKE CITY AND THE POLICE DEPARTMENT

Mr. Cooperstein asserts claims for *Monell* municipal liability against Salt Lake City and the Salt Lake City Police Department. It is well-established that "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). Because Mr. Cooperstein failed to show a constitutional violation, his municipal liability claims against Salt Lake City and the Police Department likewise fail and are dismissed with prejudice.

### IV. CLAIM AGAINST POLICE CHIEF BROWN

Mr. Cooperstein asserts a claim against Salt Lake City Police Chief Mike Brown. This claim fails for multiple reasons. First, Mr. Cooperstein's claim against Chief Brown fails as a matter of law because, as addressed above, Mr. Cooperstein failed to show Officers West and Anderson committed an underlying constitutional violation. Where subordinates' "conduct was not unconstitutional," "it follows that [a supervisor] did not act unconstitutionally in failing to prevent their conduct." *Hinton,* 997 F.2d at 783.

Second, in the alternative, Mr. Cooperstein's claim against Chief Brown fails as a matter of law because the claim against him is in his official capacity.[25] An official-capacity claim is simply "another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 n.55 (1978)). The claim is thus duplicative of Mr. Cooperstein's claims against Salt Lake City (and the Police Department), and may be dismissed.

Third, also in the alternative, the claim against Chief Brown are dismissed for failure to state a claim. To state a Section 1983 claim against a supervisor, "a plaintiff must show an 'affirmative link' between the supervisor and the constitutional violation." *George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Commissioners,* 32 F.4th 1246, 1255 (10th Cir. 2022) (internal quotation marks omitted). This requires showing: "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Cox v. Glanz,* 800 F.3d 1231, 1248 (10th Cir. 2015) (internal quotation marks omitted). Here, Mr. Cooperstein failed to assert factual allegations to support these elements.

---

[25] Compl. ¶¶ 67–75 (ECF No. 1).

For each of these reasons, Mr. Cooperstein fails to state a claim against Chief Brown, and the claim is dismissed with prejudice.

## V.   UTAH STATE-LAW CLAIMS

### A.   Claim for Violation of Article 1, Section 14 of the Utah Constitution

Mr. Cooperstein's Fourth Cause of Action alleging a violation of Article 1, section 14 of the Utah Constitution against the Officers is dismissed with prejudice. Defendants and Mr. Cooperstein both agreed the language of the Utah provision is identical to its federal counterpart and should be interpreted and applied in the same manner. Because, as addressed above, Mr. Cooperstein failed to state a Fourth Amendment claim, Plaintiff also fails to state a Utah constitutional claim.

Additionally, even if Mr. Cooperstein had alleged a violation of Section 14, the allegations of the Complaint along with the uncontroverted bodycam videos, establish Mr. Cooperstein failed to plead a "flagrant" violation of the provision, as required under Utah law to make a claim for damages. *See Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist*., 2000 UT 87, ¶ 22, 16 P.3d 533. A "flagrant violation element" means a defendant must have "violated clearly established constitutional rights of which a reasonable person would have known," and "[t]o be considered clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that [constitutional] right." *Dexter v. Bosko*, 2008 UT 29, ¶ 23, 184 P.3d 592 (second alteration in original). Here, Plaintiff fails to meet this standard. As set forth above, a reasonable person would not have believed it violated the Utah Constitution to help Ms. Williams remove items she identified as her own, after Mr. Cooperstein admitted her belongings were in the garage, after Mr. Cooperstein verbally

16

consented to their removal, and opened the garage for the Officers and Ms. Williams to retrieve the items. Mr. Cooperstein's Fourth Cause of Action is dismissed with prejudice and on the merits.

      **B.    Claims for Breach of Fiduciary Duty and Intentional Infliction of Emotional Distress**

Mr. Cooperstein also alleged Utah common law causes of action for "Breach of Fiduciary Duty as a Public Official" (Fifth Cause of Action) and Intentional Infliction of Emotional Distress (Sixth Cause of Action) against the Officers. These claims are barred by governmental immunity.

The Governmental Immunity Act of Utah ("**GIAU**") "governs all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority." Utah Code Ann. § 63G-7-101(2)(b). It provides that government entities and employees "retain immunity from suit unless that immunity has been expressly waived in this chapter." *Id*. § 63G-7-101(3).

Mr. Cooperstein's claims are barred for two reasons. First, no provision of the GIAU waives immunity for claims of breach of fiduciary duty or intentional infliction of emotional distress. *See generally id.* §§ 63G-7-101 *et seq.* Second, the GIAU expressly provides that "immunity is not waived, for any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment, if the injury arises out of or in connection with, or results from," among other things, "violation of civil rights" or "infliction of mental anguish." *Id*. § 63G-7-201 (4)(b). Mr. Cooperstein's Fifth and Sixth Causes of Action are premised on allegations of violations of his civil rights and infliction of mental anguish. Accordingly, even if there had been a waiver of immunity applicable to the causes of action, the

17

GIAU contains an exception to that waiver for Mr. Cooperstein's alleged injuries. Thus, immunity is not waived for these claims, and they are dismissed with prejudice.

## **ORDER**

For the reasons stated above, Defendants' Motion is **GRANTED**. Mr. Cooperstein's Complaint is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

DATED this 12 June 2024.

_____
Dustin B. Pead
United States Magistrate Judge